# IN THE SUPREME COURT OF THE STATE OF NEVADA

ANTHONY TERRELL BARR,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 78295

FILED

SEP 1 8 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of conspiracy to commit burglary, conspiracy to commit robbery, five counts of burglary while in possession of a deadly weapon, eight counts of robbery with the use of a deadly weapon, three counts of assault with a deadly weapon, assault with a deadly weapon of a victim 60 years of age or older, and carrying a concealed pneumatic gun. The district court adjudicated appellant Anthony Barr as a habitual criminal with respect to the burglary while in possession of a deadly weapon and robbery with the use of a deadly weapon counts, imposing an aggregate sentence of life without the possibility of parole. Eighth Judicial District Court, Clark County; Douglas Smith,[1] Judge. Barr raises seven main contentions on appeal.[2]

First, Barr contends that the evidence presented at trial was insufficient to support deadly weapon enhancements because no weapon was either seen by a witness or found at the crime scenes. But the totality of the evidence supports the deadly weapon enhancements because it showed Barr and/or his codefendant threatened the victims with the use of

---

[1]Judge Valerie Adair presided over the trial.

[2]Pursuant to NRAP 34(f)(1), we have determined that oral argument is not warranted.

SUPREME COURT
OF
NEVADA

(O) 1947A

20-34474

a weapon, *see* NRS 193.165(6)(b) (including in the deadly weapon definition weapons "threatened to be used"); *Bartle v. Sheriff*, 92 Nev. 459, 460, 552 P.2d 1099, 1099 (1976) (explaining that a deadly weapon enhancement is warranted if the evidence suggests the defendant used a deadly weapon to facilitate the crime, even if witnesses never actually saw a weapon), and guns were found in Barr's and his codefendant's cars. Additionally, an officer observed a bulge at Barr's waistline immediately preceding the final set of crimes and surveillance video thereafter captured Barr pulling a gun from his waistband while committing the final bank heist. Accordingly, there was sufficient evidence by which a rational juror could find Barr guilty beyond a reasonable doubt on the deadly weapon enhancements. *See McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992) (recognizing that it is for the jury to weigh evidence and determine witness credibility, and when reviewing a challenge to the sufficiency of the evidence this court will consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979))); *Wilkins v. State*, 96 Nev. 367, 374-75, 609 P.2d 309, 313-14 (1980) (providing that a jury can rely on both direct and circumstantial evidence in returning its verdict).

Second, Barr argues that the district court erred by not severing the four robbery charges. After reviewing for plain error, we disagree. *See Valdez v. State*, 124 Nev. 1172, 1190, 196 P.3d 465, 477 (2008) (reviewing unpreserved claims for plain error, defined as one affecting a defendant's substantial rights by causing actual prejudice, a miscarriage of justice, or a grossly unfair outcome). The crimes occurred over the span of a few months, involved Barr or his codefendant entering banks while disguised, and involved threats of using a weapon against the tellers when demanding

SUPREME COURT
OF
NEVADA

(O) 1947A

money. Thus, the offenses were connected together and joinder was appropriate. *See* NRS 173.115(1)(b) (allowing for joinder of charges that are "connected together" or "constituting parts of a common scheme or plan"); *Farmer v. State*, 133 Nev. 693, 699-700, 405 P.3d 114, 120-21 (2017) (defining common scheme and explaining that the offenses are not required to be identical to be joined under NRS 173.115). The evidence relating to the robberies also would have been admissible for relevant, nonpropensity purposes in separate trials, negating that any prejudice resulted from the joinder. *See* NRS 48.045(2) (providing that evidence of other crimes may be admissible for nonpropensity purposes such as proof of opportunity, preparation, plan, or identity); *Middleton v. State*, 114 Nev. 1089, 1108, 968 P.2d 296, 309 (1998) (pointing to the cross-admissibility of evidence as indicative of the lack of undue prejudice resulting from joinder). Further, the issue of guilt was not close—victim eyewitness testimony, testimony from witnesses who knew Barr and identified him as one of the perpetrators, and video surveillance all supported the jury's verdict. *Cf. Weber v. State*, 121 Nev. 554, 575, 119 P.3d 107, 122 (2005) (explaining that close cases are "more likely" to require reversal "because [joinder] may prevent jurors from making a reliable judgment about guilt"), *overruled on other grounds by Farmer*, 133 Nev. 693, 405 P.3d 114.

Third, Barr argues that the district court erred in not severing his case from his codefendant's, whose defense was antagonistic to his and against whom there was more evidence. We disagree as Barr has not demonstrated plain error because he offers no argument as to how the

codefendant's *trial*[3] defenses were antagonistic to his. *See Valdez*, 124 Nev. at 1190, 196 P.3d at 477 (addressing plain error); *see also* NRS 173.135 (providing that defendants may be charged in the same charging document when they participated in the same criminal conduct); NRS 174.165 (providing discretion to the district court to sever where prejudice results from joining defendants). And a defendant is not entitled to severance merely because the evidence against a codefendant is more damaging. *Lisle v. State*, 113 Nev. 679, 690, 941 P.2d 459, 466 (1997), *limited on other grounds by Middleton*, 114 Nev. 1089, 968 P.2d 296.

Fourth, Barr argues that the district court committed plain error by admitting character evidence—several previous traffic stops—and by doing so without first conducting a *Petrocelli* hearing. We conclude that Barr has not demonstrated plain error because the detective had to explain the circumstances surrounding the traffic stops in order to explain how he identified Barr as the perpetrator (the robbery perpetrators were seen getting into the same vehicle) and ultimately apprehended him after having placed a tracker on Barr's vehicle. *See* NRS 48.035(3) ("Evidence of another act or crime which is so closely related to an act in controversy or a crime charged that an ordinary witness cannot describe the act in controversy or the crime charged without referring to the other act or crime shall not be excluded."); *State v. Shade*, 111 Nev. 887, 894, 900 P.2d 327, 331 (1995)

---

[3]Barr only references antagonistic defenses that he claims affected him at sentencing, which the jury would not have been privy to and is irrelevant to a codefendant-severance analysis. *See Marshall v. State*, 118 Nev. 642, 646, 56 P.3d 376, 378 (2002) (explaining that antagonistic defenses only require severance when the defenses are so irreconcilable that the jury accepting the codefendant's theory would prohibit the defendant's acquittal).

(determining "whether witnesses can describe the crime charged without referring to related uncharged acts" to decide whether to admit evidence under NRS 48.035(3)); *see also Bellon v. State*, 121 Nev. 436, 444, 117 P.3d 176, 180 (2005) (indicating that the district court is not required to hold a *Petrocelli* hearing when it admits evidence under NRS 48.035(3)).

Fifth, Barr argues that the district court violated his right to confrontation when it limited his cross-examination of detectives regarding the aforementioned tracking device.[4] We disagree, as the district court properly excluded irrelevant questions regarding the tracker's size or location on the vehicle, but allowed all other questions about the tracker's accuracy and how it ultimately led detectives to Barr.[5] *See* NRS 48.015

---

[4]Relatedly, Barr argues that the district court erred in admitting unqualified and unnoticed expert testimony regarding the car tracker and Google maps. But Barr neither identifies which State witness(es) his argument applies to nor cites to the record to support his argument. *See* NRAP 28(e)(1) (requiring citations to the record to support assertions in briefs); *Skinner v. State*, 83 Nev. 380, 384, 432 P.2d 675, 677 (1967) (recognizing that this court can decline to consider assertions that are not supported by record citations). And State law enforcement witnesses did not testify as experts because their testimony did not go beyond relaying facts regarding their use of the tracker and Google maps to locate Barr. *See Abbott v. State*, 122 Nev. 715, 728, 138 P.3d 462, 471 (2006) (explaining when a witness's testimony constitutes expert testimony).

[5]To the extent Barr argues that the information outputted from the tracker amounted to an improper testimonial statement of an unavailable witness in violation of hearsay rules, we conclude that he has not demonstrated plain error where the data retrieved was machine-based and was not a "statement" that could be considered hearsay. *See* NRS 51.045 (defining a statement for hearsay purposes as "[a]n oral or written assertion" or "[n]onverbal conduct of a *person*, if it is intended as an assertion" (emphasis added)); *Valdez*, 124 Nev. at 1190, 196 P.3d at 477 (reviewing unpreserved errors for plain error); *see also Commonwealth v.*

SUPREME COURT
OF
NEVADA

(O) 1947A

(defining relevant evidence as that which makes a material fact at issue more or less probable); *Mendoza v. State*, 122 Nev. 267, 277, 130 P.3d 176, 182 (2006) ("Determinations of whether a limitation on cross-examination infringes upon the constitutional right of confrontation are reviewed de novo.").[6]

Sixth, Barr argues that the district court erred in not continuing his sentencing hearing once he took issue with information in his presentence investigation report (PSI). We review a district court's decision on a motion to continue for an abuse of discretion, which will only be found if a defendant demonstrates that the denial prejudiced him. *Higgs v. State*, 126 Nev. 1, 9, 222 P.3d 648, 653 (2010). Barr requested a continuance due to alleged inaccuracies and missing information in his PSI, and claimed that he needed additional time and counsel's help to identify any further inaccuracies because he only had a third-grade education.[7] The district court abused its discretion when it declined to continue Barr's sentencing because that prevented him from thoroughly reviewing the PSI for all potential errors in order to lodge an objection. *See Sasser v. State*, 130 Nev. 387, 390, 324 P.3d 1221, 1223 (2014) (reiterating a defendant's right to object to factual errors in the PSI, but requiring any such objection to be made before sentencing); *Shields v. State*, 97 Nev. 472, 473, 634 P.2d

---

*Thissell*, 928 N.E.2d 932, 937 n.13 (Mass. 2010) (explaining that, "[b]ecause computer-generated records, by definition, do not contain a statement from a person, they do not necessarily implicate hearsay concerns").

[6]The record shows that Barr objected, so we review de novo despite both parties arguing for plain error review.

[7]Although Barr's counsel initially indicated that he had not yet gone over the "massive PSI" with Barr, he acknowledged that they discussed it after the court passed the case while waiting for codefendant's counsel.

SUPREME COURT
OF
NEVADA

(O) 1947A

468, 469 (1981) ("NRS 176.156 contemplates that persons convicted of crimes should have the opportunity to make informed comments on, and response to, all factual assertions contained in presentence investigation reports."). The district court further erred in not addressing all of Barr's assertions. *See Sasser*, 130 Nev. at 390-91, 324 P.3d at 1223-24 (requiring the district court to determine whether challenged PSI information is erroneous); *Stockmeier v. State, Bd. of Parole Comm'rs*, 127 Nev. 243, 250, 255 P.3d 209, 214 (2011) (emphasizing that regardless of whether an error impacts a defendant's sentence, the Department of Corrections could rely on significant inaccuracies in determining a defendant's "classification, placement in certain programs, and eligibility for parole," necessitating an avenue to immediately seek correction of a faulty PSI to prevent reliance on a PSI that cannot be subsequently changed). But we conclude these errors do not warrant reversal because Barr has not demonstrated prejudice—the alleged errors were insignificant[8] or irrelevant to sentencing and Barr utilized the PSI's recommendation of concurrent time to argue for a lesser sentence than his maximum exposure. *See Blankenship v. State*, 132 Nev. 500, 509, 375 P.3d 407, 413 (2016) (explaining that an error in a sentencing form does not amount to "impalpable or highly suspect evidence" unless it tainted the PSI sentencing recommendation considered by the district court). And the record as a whole supports that the district court's sentencing was based on the accurate information presented at sentencing—the circumstances surrounding the crimes and prior felony convictions that Barr agreed were accurately reflected in the PSI. *See Thomas v. State*, 88 Nev. 382, 385, 498 P.2d 1314, 1316 (1972) (explaining

---

[8]At one point, Barr conceded that the errors were "small."

SUPREME COURT
OF
NEVADA

(O) 1947A

that a district court can impose a legally sound sentence even when there are inadequacies in sentencing forms produced by the Division).

Barr next argues, for the first time on appeal, that the district court erred in basing its sentencing decision on facts not in the record, weighing Barr's speedy-trial-right invocation in making its sentencing decision, and altering his sentence at a subsequent hearing. After plain error review, we disagree. *See Rodriguez v. State*, 134 Nev. 780, 781, 431 P.3d 45, 46 (2018) (reviewing for plain or clear error affecting substantial rights when a defendant fails to lodge a contemporaneous objection or argument on a sentencing issue). The record shows that the district court did not consider Barr's speedy-trial invocation or rely on highly suspect or impalpable information, but rather made its sentencing decision after considering arguments by defense counsel and the State, Barr's statement, a victim impact statement, and Barr's prior felonies that formed the basis for his habitual criminal treatment.[9] *See Smith v. State*, 112 Nev. 871, 873, 920 P.2d 1002, 1003 (1996) (explaining that this court will not disturb a sentence that is within statutory limits unless the district court relied on "highly suspect or impalpable information"). Additionally, at the second sentencing hearing, which occurred before the judgment of conviction was filed and while Barr's case was still within the district court's jurisdiction, the district court appropriately vacated illegal sentences on counts Barr was

---

[9]Barr's sentence was within the prescribed statutory range for his convictions, enhancements, and treatment as a habitual criminal. *See* NRS 193.130 (punishment for felonies); NRS 193.165 (deadly weapon enhancement); NRS 193.167 (crimes committed against persons 60 years of age or older); NRS 199.480 (conspiracy); NRS 200.380 (robbery); NRS 200.471 (assault); NRS 202.350 (carrying a concealed weapon); NRS 205.060 (burglary); NRS 207.010 (habitual criminal penalties).

not charged with; sentenced Barr to concurrent time on a count he was not previously sentenced for; and sentenced him as a habitual criminal on the burglary while in possession of a deadly weapon counts, none of which increased his overall aggregate sentence. *See* NRS 176.555 ("The court may correct an illegal sentence at any time."); NRS 176.565 ("Clerical mistakes in judgments . . . and errors in the record arising from oversight or omission may be corrected by the court at any time and after such notice, if any, as the court orders."); *Bradley v. State*, 109 Nev. 1090, 1095, 864 P.2d 1272, 1275 (1993) (explaining that an oral pronouncement of a sentence does not divest the district court's jurisdiction over the defendant, and it can modify a sentence before the clerk enters the signed judgment of conviction).

Seventh, Barr argues that cumulative error warrants reversal. We disagree because the errors identified above occurred during sentencing and therefore could not have impacted the jury's verdict.[10] *See Valdez*, 124 Nev. at 1196, 196 P.3d at 481 (assessing cumulative error claims by first considering if the errors prejudiced the jury's verdict). We therefore

ORDER the judgment of conviction AFFIRMED.

_____, J.
Parraguirre

_____, J.          _____, J.
Hardesty                              Cadish

---

[10]We decline to address the preservation-of-evidence and amended information claims that Barr references but does not cogently argue. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987) ("It is appellant's responsibility to present relevant authority and cogent argument; issues not so presented need not be addressed by this court.").

SUPREME COURT
OF
NEVADA

(O) 1947A

cc:    Chief Judge, The Eighth Judicial District Court
Eighth Judicial District Court, Dept. 8
Jeannie N. Hua
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A